No. 23-16102

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

JUSTIN DOWNING,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

*Plaintiff-Appellant*,

v.

LOWE'S COMPANIES, INC., A NORTH CAROLINA CORPORATION;
FIRST ADVANTAGE CORPORATION, A DELAWARE CORPORATION;
LOWE'S HOME CENTERS, LLC,

*Defendants-Appellees*.

---

On Appeal from an Order
of the United States District Court for the District of Arizona
No. 3:22-cv-08159-SPL

---

### Brief For Defendant-Appellee Lowe's Home Centers, LLC

---

Rachael Jensen
Gibson, Dunn & Crutcher LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone: (214) 698-3134
rjensen@gibsondunn.com

Jason C. Schwartz
*Counsel of Record*
Molly T. Senger
Matt Gregory
David Schnitzer
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
jschwartz@gibsondunn.com
msenger@gibsondunn.com
mgregory@gibsondunn.com
dschnitzer@gibsondunn.com

*Counsel for Defendant-Appellee Lowe's Home Centers, LLC*

**Disclosure Statement**

Under Federal Rule of Appellate Procedure 26.1, the undersigned counsel of record certifies that Defendant-Appellee Lowe's Home Centers, LLC is a wholly owned subsidiary of Lowe's Companies, Inc., a publicly held corporation. No other entity has an ownership interest of 10% or more in Lowe's Home Centers, LLC.

# Table Of Contents

**Page**

Introduction ..................................................................................................1

Statement Of Jurisdiction.............................................................................5

Statement Of The Issues ..............................................................................5

Statement Of The Case ................................................................................6

    I.     The Fair Credit Reporting Act .................................................6

    II.    Downing Authorizes Lowe's To Obtain His Background Report........7

    III.   This Lawsuit .............................................................................8

Summary Of Argument...............................................................................10

Standard Of Review ...................................................................................13

Argument....................................................................................................14

    I.     The Disclosure Complies With The FCRA. .......................14

         A.    The District Court Correctly Concluded That The
Disclosure Stands Alone And Downing's Arguments To
The Contrary Lack Merit. ........................................15

         B.    Downing's Arguments That The Disclosure Violates The
FCRA's Clear And Conspicuous Requirement Similarly
Fail.............................................................................21

    II.    Downing Lacks Standing To Challenge Any Of The Alleged
Deficiencies He Raises On Appeal. ....................................31

    III.   Downing Does Not Plausibly Allege That Any Alleged FCRA
Violation Was Willful. ........................................................33

Conclusion ................................................................................................40

# Table Of Authorities

**Page(s)**

## Cases

*Arizona v. Tohono O'odham Nation*,
   818 F.3d 549 (9th Cir. 2016) ........................................................................27

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................32, 33

*Brown v. Lowe's Companies, Inc.*,
   No. 5:13-cv-79 (W.D.N.C.) ..................................................................38, 39

*Chapman v. Pier 1 Imps. (U.S.) Inc.*,
   631 F.3d 939 (9th Cir. 2011) (en banc) .......................................................31

*Downing v. Haven Health Grp., LLC*,
   No. 3:18-cv-8109 (D. Ariz. May 23, 2018) ...................................................3

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
   895 F.3d 1166 (9th Cir. 2018) .....................................................................31

*EEOC v. Peabody W. Coal Co.*,
   773 F.3d 977 (9th Cir. 2014) .......................................................................34

*F.B.T. Prods., LLC v. Aftermath Records*,
   621 F.3d 958 (9th Cir. 2010) .......................................................................27

*Flores v. Am. Seafoods Co.*,
   335 F.3d 904 (9th Cir. 2002) .......................................................................22

*Gilberg v. Cal. Check Cashing Stores, LLC*,
   913 F.3d 1169 (9th Cir. 2019) ........................................ 9, 18, 21, 22, 24, 25, 36

*Johnson v. Riverside Healthcare Sys., LP*,
   534 F.3d 1116 (9th Cir. 2008) .....................................................................33

*King v. Burwell*,
   576 U.S. 473 (2015) .....................................................................................29

*Luna v. Hansen & Adkins Auto Transp., Inc.*,
   956 F.3d 1151 (9th Cir. 2020) ..................................................................6, 21

*Marino v. Ocwen Loan Servicing LLC*,
   978 F.3d 669 (9th Cir. 2020) ............................................................4, 13, 33, 34

*Mitchell v. WinCo Foods, LLC*,
   828 F. App'x 467 (9th Cir. 2020) ................................................................39

iii

# Table Of Authorities
*(continued)*

**Page(s)**

*Moore v. Rite Aid Headquarters Corp.*,
2015 WL 3444227 (E.D. Pa. May 29, 2015) ...............................................37, 38

*Or. Paralyzed Veterans of Am. v. Regal Cinemas, Inc.*,
339 F.3d 1126 (9th Cir. 2003) ...................................................................27

*Pa. Dep't of Corr. v. Yeskey*,
524 U.S. 206 (1998) ..................................................................................27

*Pac. Gas & Elec. Co. v. FERC*,
746 F.2d 1383 (9th Cir. 1984) ...................................................................22

*Pedro v. Equifax, Inc.*,
868 F.3d 1275 (11th Cir. 2017) .................................................................39

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006) ......................................................................3

*Rubio v. Cap. One Bank*,
613 F.3d 1195 (9th Cir. 2010) ...................................................................25

*Safeco Ins. Co. of Am. v. Burr*,
551 U.S. 47 (2007) ...................................... 4, 13, 34, 35, 37, 39, 40

*Saucier v. Katz*,
533 U.S. 194 (2001) .............................................................................13, 35

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .............................................................................31, 32

*Syed v. M-I, LLC*,
853 F.3d 492 (9th Cir. 2017) ...................................18, 32, 36, 37, 39

*Walker v. Fred Meyer, Inc.*,
953 F.3d 1082 (9th Cir. 2020) .........................................................*passim*

## Statutes

15 U.S.C. § 1681a ................................................................16, 17, 28

15 U.S.C. § 1681b ....................................................6, 10, 14, 15, 26

15 U.S.C. § 1681n ...........................................................................6, 33

15 U.S.C. § 1681*o* .................................................................4, 6, 7, 34

iv

**Table Of Authorities**
*(continued)*

**Page(s)**

**Other Authorities**

FTC, Advisory Opinion to Coffey, 1998 WL 34323748 (Feb. 11, 1998).........15, 37

## Introduction

When Justin Downing applied for a job with Lowe's Home Centers, LLC ("Lowe's"), he received a disclosure statement informing him that Lowe's would obtain his background report for employment purposes. The disclosure defined the term "background report," and explained what kinds of information the background report would and would not include. Downing now claims that the disclosure violated the Fair Credit Reporting Act (the "FCRA") because, he says, it was confusing and included extraneous information. The district court correctly dismissed Downing's claims against Lowe's, and this Court should affirm.[1]

The district court's decision was based on the plain text of Lowe's disclosure and this Court's controlling decision in *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082 (9th Cir. 2020). As the district court explained, Lowe's disclosure satisfies the FCRA because it informs the reader "that a consumer report may be obtained for employment purposes," and provides a "concise explanation of what that phrase

---

[1] Downing also sued the company that procured the background report, arguing that the report was inaccurate because it improperly included three convictions that had been set aside. Those claims are still being litigated in the district court, and are not relevant to this appeal. Additionally, the First Amended Complaint, ER-29, replaced Lowe's Companies, Inc. with Lowe's Home Centers, LLC as the sole Lowe's defendant. Thus, Lowe's Home Centers, LLC is the only defendant-appellee in this appeal.

means" by describing "what type of information may be included in the 'consumer report.'" *Id.* at 1088–89; ER-15–20.

On appeal, Downing makes the same two arguments regarding Lowe's disclosure that the district court correctly rejected below. First, he argues that the disclosure violates the FCRA's "standalone" requirement because it states that Lowe's will obtain a background report regarding the reader or the reader's "child/ward," and will not seek certain credit information without separate authorization. Second, he contends that Lowe's disclosure violates the FCRA's "clear and conspicuous" requirement because that same language is confusing. As the district court correctly concluded, both of these arguments fail.

As for the first argument, Downing's challenge is foreclosed by this Court's decision in *Walker*, which held that a disclosure may contain an explanation of "what type of information may be included in the 'consumer report'" without running afoul of the FCRA's "standalone" requirement. 953 F.3d at 1088–89. "Such information" "further[s] the purpose of the disclosure by helping the consumer understand the disclosure," thus promoting "Congress' purpose to protect consumers from improper invasions of privacy." *Id.* at 1089. As for the second argument, Lowe's seeks information relating to job applicants, as the FCRA allows, whether that applicant is the reader of Lowe's disclosure or, in the case of a minor job applicant, the reader's child (or ward). No reasonable job applicant would assume that Lowe's seeks

background information concerning the *applicant's children*. Nor could any reasonable reader misconstrue the final sentence of the disclosure, informing the reader that Lowe's will not seek the applicant's credit information.

In any event, Downing lacks standing to challenge either of these purported FCRA violations because he has not alleged facts showing how he was injured by them—for example, Downing does not allege that he had children, that Lowe's sought their background information after he authorized a consumer report, that he was unaware that Lowe's would seek his consumer report, or that Lowe's requested a consumer report that went beyond his expectations based on the disclosure. Nor does he explain how the purported technical violations he raises on appeal could have impacted his decision to authorize the consumer report.[2]

Even if Downing could overcome these obstacles, his appeal still would fail on the alternative ground that any purported violation was not willful, and he has abandoned his half-hearted claim for a negligent violation (which requires showing

---

[2]  In 2018 (four years before the 2022 job application at issue here), Downing made virtually identical allegations against another prospective employer, claiming that he was confused by the employer's disclosure form and that he did not understand that he was consenting to the employer obtaining his consumer report. *See* Compl., *Downing v. Haven Health Grp., LLC*, No. 3:18-cv-8109 (D. Ariz. May 23, 2018), ECF 1. Downing was represented in that case by the same law firms that represent him here. *See id.* at 13–14. The existence of that case and Downing's allegations are subject to judicial notice. *See, e.g.*, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

*actual* damages). *See* 15 U.S.C. § 1681*o*(a)(1) (requiring actual damages for a claim of negligent noncompliance with the FCRA). "To prove a willful violation" of the FCRA, Downing would need to plausibly allege "not only that [Lowe's] interpretation" of the FCRA "was objectively unreasonable, but also that [Lowe's] ran a risk of violating the statute that was substantially greater than the risk associated with a reading that was merely careless." *Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 673 (9th Cir. 2020). Downing cannot possibly make that showing here. Where, as here, "the applicable language of the FCRA is 'less than pellucid,' . . . a defendant will nearly always avoid liability so long as an appellate court has not already interpreted that language" to prohibit the defendant's conduct. *Id.* at 673–74 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 (2007)). "This is not a case in which" Lowe's "had the benefit of guidance from the courts of appeals or the Federal Trade Commission (FTC) that might have warned it away from the view it took." *Safeco*, 551 U.S. at 70. To the contrary, Lowe's interpretation of the law is supported by this Court's decision in *Walker*, administrative guidance from the Federal Trade Commission, and the district court's analysis on the merits below. And, even assuming that Lowe's and the district court were wrong on the merits, there is no basis for concluding that Lowe's and the district court's interpretation of the FCRA was reckless or objectively unreasonable.

4

The FCRA's "standalone" and "clear and conspicuous" requirements are not meant to encourage plaintiffs, attorneys, or courts to redline an employer's disclosure in an effort to manufacture a violation. Rather, they are meant to ensure that consumers have sufficient information to meaningfully authorize a consumer report. Lowe's clearly provided that information here. As the district court correctly held, that is all that the FCRA requires.

## Statement Of Jurisdiction

Lowe's agrees with Downing's statement of this Court's statutory jurisdiction, and agrees that the district court's order and judgment are final under Federal Rule of Civil Procedure 54(b).

## Statement Of The Issues

**1.** Whether the district court correctly concluded that Lowe's disclosure complies with the FCRA's standalone requirement under *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082 (9th Cir. 2020).

**2.** Whether the district court correctly concluded that Lowe's disclosure was clear and conspicuous.

**3.** Whether Downing has standing to raise the arguments he makes on appeal.

**4.** Whether Downing plausibly alleged that Lowe's willfully violated the FCRA.

5

## Statement Of The Case

## I.     The Fair Credit Reporting Act

The Fair Credit Reporting Act ("FCRA") provides that a prospective employer may obtain an applicant's consumer report "for employment purposes" during the hiring process.  15 U.S.C. § 1681b.  To obtain an applicant's consumer report, the employer must first provide "a clear and conspicuous disclosure . . . in writing to the consumer . . . in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes."  *Id.* § 1681b(b)(2)(A)(i).

As relevant here, the FCRA includes two requirements:  First, the document must "consist[] solely of the disclosure," meaning that the disclosure must "stand alone."  *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1087 (9th Cir. 2020).  Second, the disclosure must be "clear and conspicuous," meaning that it must be in a "reasonably understandable form that is readily noticeable to the consumer."  *Luna v. Hansen & Adkins Auto Transp., Inc.*, 956 F.3d 1151, 1153 (9th Cir. 2020) (quotation marks omitted).

The FCRA provides a private cause of action only for willful or negligent violations.  15 U.S.C. §§ 1681n, 1681*o*.  For willful violations, a plaintiff may seek either statutory damages or "actual damages."  *Id.* § 1681n(a)(1)(A).  For negligent violations, a plaintiff may recover (and thus must adequately plead) only actual

damages.  *Id.* § 1681*o*.  On appeal, Downing advances only a willful violation theory.[3]  *See* Downing Br. at 28–30.

## II.     Downing Authorizes Lowe's To Obtain His Background Report

Justin Downing applied for a job at a Lowe's store in Show Low, Arizona. ER-33.  As part of the application process, Lowe's provided Downing with an online application packet that included the following written disclosure:

> DISCLOSURE REGARDING BACKGROUND REPORT
>
> Lowe's Companies, Inc. and/or its affiliates, including Lowe's Home Centers, LLC, ("Lowe's") may obtain a "background report" about you or your child/ward for employment purposes from a third-party consumer reporting agency.  "Background report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on your or your child's/ward's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living.  The reports may include information regarding your or your child's/ward's history, criminal history, social security verification, motor vehicle records, verification of your education or employment history, or other background check results.
>
> Lowe's will not request any information related to your or your child's/ward's worthiness, credit standing, or credit capacity without providing you or your child/ward, separately, with information related to the use of that information and obtaining separate authorization from you to obtain such information, where required.

---

[3] Downing's First Amended Complaint included an allegation that Lowe's negligently violated the FCRA.  ER-42–43, 45–46.  In its motion to dismiss, Lowe's explained that Downing's claim for a negligent FCRA violation was foreclosed because Downing failed to allege any actual damages.  The district court held that Lowe's did not violate the FCRA, so it never reached the question of whether any alleged violation could have been negligent.  *See* ER-23.

ER-57–58.

Downing acknowledged receipt of the disclosure and authorized Lowe's to obtain his background report. ER-33. Lowe's then obtained Downing's background report from First Advantage, a consumer-reporting agency. ER-31, 35. The report showed that Downing had pled guilty to three criminal offenses, although in his separate claims against First Advantage, Downing alleges that those convictions were set aside. ER-35–36.

## III. This Lawsuit

Around six months after Downing was denied employment with Lowe's, Downing brought a putative class action lawsuit against Lowe's and First Advantage in the District of Arizona. As relevant here, Downing sued Lowe's for allegedly providing a disclosure that violated the FCRA's standalone requirement (Count I) and clear-and-conspicuous requirement (Count II). Lowe's moved to dismiss Downing's claims under Federal Rule of Civil Procedure 12(b)(6).

The district court granted the motion. The district court first held that the disclosure does not violate the FCRA's standalone requirement. ER-20. Applying this Court's decision in *Walker*, 953 F.3d 1082, to the four sentences in Lowe's disclosure, the district court held that each sentence included only permissible information. *See* ER-15–20. For example, the district court held that the fourth sentence "explains that certain credit-related information will only be obtained if a

8

separate authorization is signed," and is thus "part of the Disclosure's 'concise explanation' of what it means for Lowe's to obtain a consumer report," as well as "what a 'consumer report' entails" and "how it will be 'obtained.'" ER-19 (quoting *Walker*, 953 F.3d at 1084). Additionally, the district court held that the disclosure's statement that Lowe's is seeking information regarding the reader or the reader's "child/ward" is not a "joint disclosure for multiple people," but instead, "merely informs the applicant of *whose* information might be obtained as part of the background report, which falls squarely within the scope of 'describing what a "'consumer report' entails.'" ER-20 (brackets omitted) (quoting *Walker*, 953 F.3d at 1084).

As for Count II, the district court held that the disclosure did not violate the FCRA's clear and conspicuous requirement because it "was reasonably understandable and therefore sufficiently clear for purposes of the FCRA," and "does not 'contain [any] language that a reasonable person would not understand.'" ER-21 (quoting *Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169, 1177 (9th Cir. 2019)). In response to Downing's argument that the phrase "you or your child/ward" is inherently unclear, the district court held that the language is "not confusing; rather, the [phrase] simply disclose[s] to the reader that Lowe's may obtain information about their child." ER-22. The court then went on to note in the alternative that "[e]ven assuming . . . ambiguity exists" in the phrase "you or your

9

child/ward," it would not render the disclosure as a whole "confusing, misleading, or otherwise unclear as a result." ER-22. This is because "[w]hether the report concerns 'the applicant, their children/wards, or both' is of no matter to the FCRA disclosure requirement. Rather, the Act requires only 'a clear and conspicuous disclosure . . . that a consumer report may be obtained for employment purposes.'" ER-22 (quoting 15 U.S.C. § 1681b(b)(2)(A)(i)). Additionally, the court found that the disclosure's final sentence was "more than reasonably understandable" in explaining that Lowe's "will not request any information bearing on" an applicant's credit "without obtaining separate authorization." ER-23.

Downing sought and received certification of a final judgment on his claims against Lowe's under Federal Rule of Civil Procedure 54(b). This appeal followed.

## Summary Of Argument

**I.A.** Lowe's disclosure complies with the FCRA's standalone requirement as interpreted by this Court in *Walker*. The disclosure is short and to the point, containing just four sentences. Each sentence either informs the reader that Lowe's will request a job applicant's background report or explains what that means. The first sentence informs the reader that Lowe's may obtain a background report about an applicant for employment purposes (whether the applicant is the reader himself, as in Downing's case, or the reader's child or ward, as in the case of a minor applying for a job at Lowe's). The second sentence provides the definition of the term

10

"background report," using the same language as the FCRA itself. The third sentence lists the specific categories of information that might be included in the background report the reader is authorizing Lowe's to obtain. Finally, the fourth sentence explains that Lowe's will *not* obtain information relating to the applicant's credit history without further authorization. This language is entirely consistent with the FCRA's "standalone" requirement, as the district court correctly held.

Downing's argument that Lowe's disclosure contains extraneous language fails. Under *Walker*, an employer is not required to include only a "plain statement disclosing that a consumer report may be obtained for employment purposes." 953 F.3d at 1084 (quotation marks omitted). The disclosure may also include "some concise explanation of what [the] phrase ['consumer report'] means," including "what type of information may be included in the 'consumer report.'" *Id.* at 1088–89. That is precisely what Lowe's did here.

**I.B.** Downing is also mistaken in arguing that Lowe's disclosure somehow violates the FCRA's "clear and conspicuous" requirement through its use of the phrase "you or your child/ward." The phrase is simply designed to encompass situations in which a parent of a minor applicant is reviewing the disclosure. Straining against the text, Downing argues that the disclosure perhaps allows Lowe's to obtain multiple background reports, reports regarding job applicants' children and wards, and reports unrelated to an employment purpose. But read in context, the

11

text of the disclosure disproves each of these assertions. For example, the disclosure repeatedly refers to a single background report, notes that the report will be about the reader "*or*" the reader's child or ward, does not refer to reports regarding multiple "children" or "wards," and explains that the report is "for employment purposes."

Downing's argument that Lowe's disclosure is unclear about whether Lowe's intends to obtain information regarding an applicant's credit history is similarly meritless. The disclosure clearly informs the reader that: (1) Lowe's may obtain his background report; (2) background reports can include various categories of information; (3) the report Lowe's seeks will include some specific categories of information; but (4) the report will *not* contain information relating to credit history. There is no basis to conclude that the disclosure is anything but clear.

**II.** In any event, Downing lacks standing to raise these challenges on appeal. In obtaining Downing's background report, without his credit information, Lowe's did precisely what it said it would do in the disclosure, and Downing does not allege otherwise. He does not allege, for example, that Lowe's obtained any information regarding his credit history or any information about his children. Nor does he allege any facts explaining how or why a redlined version of Lowe's disclosure would have changed his decision as to whether to authorize the background report. Thus, he fails to plausibly allege any cognizable injury sufficient to pursue his claims against Lowe's.

**III.**  Downing's claims independently fail because he cannot plausibly allege that Lowe's *willfully* violated the FCRA, as required for his claim for statutory damages.  To establish willfulness, a plaintiff must plausibly allege "not only that the defendant's interpretation" of its legal obligations "was objectively unreasonable, but also that the defendant ran a risk of violating the statute that was substantially greater than the risk associated with a reading that was merely careless." *Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 673 (9th Cir. 2020).  Willfulness is an intentionally high bar, akin to the standard for finding liability in the context of qualified immunity. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 (2007) (citing *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  Downing cannot come close to making that showing here, even assuming he were correct that Lowe's disclosure violated the FCRA.

### Standard Of Review

This Court "review[s] de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1086 (9th Cir. 2020).  "In so doing," this Court "accept[s] all well-pleaded factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the plaintiff." *Id.*  "In determining whether the complaint's allegations state a claim for relief," this Court "review[s] de novo the district court's construction of the FCRA, because the interpretation of a statute is a question of law." *Id.*

**Argument**

Downing's claims on appeal fail for at least three reasons:  First, the disclosure at issue does not violate the FCRA because it stands alone and is clear and conspicuous.  Second, Downing has not plausibly alleged a concrete and particularized injury resulting from the alleged deficiencies in Lowe's disclosure, and thus, he lacks standing.  Third, even if Downing could somehow show a violation and standing, he cannot plausibly allege that Lowe's *willfully* violated the FCRA because Lowe's interpretation of the FCRA's requirements was not reckless in light of the text of the statute, existing precedent from this Court, and relevant guidance from the FTC.  For any or all of these reasons, this Court should affirm the district court's order granting Lowe's motion to dismiss.

## I.     The Disclosure Complies With The FCRA.

Before a prospective employer may obtain a job applicant's consumer report, the FCRA requires the employer to provide a "*clear and conspicuous disclosure . . . in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes."  15 U.S.C. § 1681b(b)(2)(A)(i) (emphases added).  As the district court correctly held, Lowe's disclosure fulfilled these requirements, and Downing's arguments to the contrary fail.

14

## A. The District Court Correctly Concluded That The Disclosure Stands Alone And Downing's Arguments To The Contrary Lack Merit.

The FCRA's requirement that an employer provide a "disclosure . . . in a document that consists solely of the disclosure," 15 U.S.C. § 1681b(b)(2)(A)(i), is known as the "standalone requirement." *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1087 (9th Cir. 2020). This Court has made clear, as the district court recognized, that a standalone disclosure may go beyond "a plain statement disclosing that a consumer report may be obtained for employment purposes." *Id.* at 1088 (quotation marks omitted). The disclosure may also include "some concise explanation of what [the] phrase ['consumer report'] means." *Id.* "For example, a company could briefly describe what a 'consumer report' entails, how it will be 'obtained,' and for which type of 'employment purposes' it may be used" without offending the FCRA's requirements. *Id.* at 1088–89 (footnote omitted); *see also* FTC, Advisory Opinion to Coffey, 1998 WL 34323748, at *2 (Feb. 11, 1998) ("[S]ome additional information, such as a brief description of the nature of the consumer reports covered by the disclosure, may be included if the information does not confuse the consumer or detract from the mandated disclosure.").

Here, Lowe's presented Downing with a disclosure that contained four sentences—all of which convey their intended meaning to a reasonable consumer, and none of which is extraneous.

**1.** The first sentence informs the reader that Lowe's may obtain a background report about the reader or their child or ward for employment purposes:

> Lowe's Companies, Inc. and/or its affiliates, including Lowe's Home Centers, LLC, ("Lowe's") may obtain a "background report" about you or your child/ward for employment purposes from a third-party consumer reporting agency.

ER-57. This sentence constitutes a "plain statement disclosing that a consumer report may be obtained for employment purposes," which fits well within the FCRA's requirements. *Walker*, 953 F.3d at 1084 (quotation marks omitted).

**2.** The second sentence, quoting directly from the FCRA, defines the term "background report":

> "Background report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on your or your child's/ward's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living.

ER-57; *see also* 15 U.S.C. § 1681a(d)(1). Like the first sentence, this sentence "does not run afoul of the standalone requirement" because it "provid[es] a very brief description of what ['background report'] means." *Walker*, 953 F.3d at 1090.

**3.** The third sentence lists the categories of information that could be included in the background report that Lowe's will obtain:

> The reports may include information regarding your or your child's/ward's history, criminal history, social security verification, motor vehicle records, verification of your education or employment history, or other background check results.

16

ER-57. This sentence informs the reader of "what private and public information about the applicant will be examined to create a '[background] report.'" *Walker*, 953 F.3d at 1090. Thus, it also does not violate the FCRA's standalone requirement. *Id.*

**4.** Finally, the fourth sentence informs the reader that Lowe's will not obtain information relating to the applicant's credit without further authorization:

> Lowe's will not request any information related to your or your child's/ward's worthiness, credit standing, or credit capacity without providing you or your child/ward, separately, with information related to the use of that information and obtaining separate authorization from you to obtain such information, where required.

ER-58. This sentence again makes clear "what private and public information about the applicant will be examined to create a '[background] report'" by letting the reader know that Lowe's will *not* seek the applicant's credit information, even though the broad definition of a background report includes credit information. *Walker*, 953 F.3d at 1090; *see* 15 U.S.C. § 1681a(d)(1). "As a result, this language also does not violate the FCRA's [standalone] requirement." *Walker*, 953 F.3d at 1090.

Downing's attempts to manufacture a violation of the standalone requirement based on Lowe's four-sentence disclosure all fail.

First, Downing argues that the final (fourth) sentence of the disclosure, which explains that Lowe's will not seek an applicant's credit information without

additional authorization, is extraneous and distracts from the disclosure. *See* Downing Br. at 23–28. However, this sentence is part of the disclosure itself because it informs the reader what the background report will "entail[]." *Walker*, 953 F.3d at 1084. And explaining precisely what a consumer is and is not authorizing is crucial to protecting consumers' rights to privacy and information under the FCRA. *See Syed v. M-I, LLC*, 853 F.3d 492, 497–99 (9th Cir. 2017).

Downing next cites to three of this Court's cases for the proposition that "extraneous information . . . that 'pulls the applicant's attention away' from the Disclosure itself . . . violate[s] the standalone requirement." Downing Br. at 26 (quoting *Syed*, 853 F.3d at 502, and citing *Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169, 1175 (9th Cir. 2019); *Walker*, 953 F.3d at 1090). But none of the three cases that Downing cites supports his argument, and one actively undermines it. *Syed* dealt with a disclosure that included a liability waiver, which plainly goes beyond a statement that a consumer report will be obtained and an explanation of what that entails. 853 F.3d at 500–03. *Gilberg* dealt with a disclosure that included a long list of applicants' rights under various states' laws, which similarly went beyond stating that a consumer report will be obtained and explaining what that means. *See* 913 F.3d at 1175–76.

And far from supporting Downing's argument, this Court's decision in *Walker* only underscores the permissibility of Lowe's disclosure. In *Walker*, this Court

assessed multiple challenges to an employer's disclosure, and held that only one aspect of the disclosure—information concerning an applicant's right to inspect files—was extraneous and violated the standalone requirement. 953 F.3d at 1090–91. The rest of the challenged language—including the disclosure's explanation of "what type of information may be included in the 'consumer report'"—was permissible, this Court found, because it was part of the disclosure itself. The same was true for language regarding how the employer would obtain the reports from a consumer reporting agency and what kinds of information the consumer reporting agency would investigate, including "education, work history," and "criminal record." Because this language "elucidate[s] what it means to 'obtain' a consumer report," this Court in *Walker* found that its inclusion in the disclosure did not violate the FCRA's standalone requirement. *Id.* at 1090.

So, too, here. By explaining to applicants that Lowe's will not seek their credit information without separate authorization, Lowe's "helpfully explains . . . what type of information may be included in the 'consumer report,'" and "elucidate[s] what it means to 'obtain' a consumer report." *Walker*, 953 F.3d at 1089–90. This sentence helps applicants understand the scope of the authorization they are providing, which safeguards the privacy rights protected by the FCRA.

Downing also argues that the "child/ward" language in Lowe's disclosure violates the standalone requirement. *See* Downing Br. at 23–25. He says that the

disclosure's use of the phrase "you or your child/ward" somehow makes this a "joint disclosure for multiple people," which, he says, would violate the standalone requirement. Downing Br. at 24. The argument is difficult to follow, but Downing appears to mean that if the disclosure could be read as authorizing Lowe's to obtain background reports regarding applicants *and* their children, then the disclosure becomes multiple FCRA disclosures in one document, rather than a single disclosure for each consumer, and would therefore violate the standalone requirement.

But this argument reflects no more than a repackaging of Downing's argument that the disclosure violates the "clear and conspicuous" requirement, and fails for similar reasons. *See infra* at 22–28; *see also Walker*, 953 F.3d at 1089 n.10 ("Walker's arguments that the disclosure statement's language confusingly 'blurs the line between consumer reports and investigative reports' such that the reader cannot understand what information will be obtained about him . . . are better directed to the clear and conspicuous requirement."). In any event, Downing fails to cite a single case holding that if a plaintiff or his lawyers can misread a disclosure to cover background reports for more than one person, then the disclosure violates the standalone requirement.

And Downing's argument is also at odds with the plain language of the disclosure. The disclosure does not state that Lowe's is seeking background *reports* (plural)—it states that Lowe's is seeking "a 'background *report*.'" ER-57 (emphases

added).  The disclosure does not state that Lowe's is seeking information regarding "you *and* your *children/wards*"—it states that Lowe's is seeking information regarding "you *or* your *child/ward*."  ER-57 (emphases added).  Thus, even if Downing were right that a single disclosure cannot cover multiple background reports for multiple individuals without running afoul of the standalone requirement, that issue would not be presented by this case, since Lowe's disclosure pertains to only one report for *either* the reader *or* the child/ward on whose behalf the reader is reviewing the disclosure.

Downing thus fails to identify any extraneous information in Lowe's four-sentence disclosure.  As the district court correctly held, each sentence in the disclosure falls squarely within this Court's holding in *Walker* regarding what is permissible in a FCRA disclosure.  *See* ER-15–20.  Lowe's disclosure thus satisfies the FCRA's standalone requirement.

### B.    Downing's Arguments That The Disclosure Violates The FCRA's Clear And Conspicuous Requirement Similarly Fail.

Downing's arguments that Lowe's disclosure violates the FCRA's clear and conspicuous requirement fare no better than his arguments that the disclosure violates the FCRA's standalone requirement.

A disclosure is "clear and conspicuous" if it is in a "'reasonably understandable form' that is 'readily noticeable to the consumer.'" *Luna v. Hansen & Adkins Auto Transp., Inc.*, 956 F.3d 1151, 1153 (9th Cir. 2020) (quoting *Gilberg*,

913 F.3d at 1176).  The test for whether a disclosure is "reasonably understandable" is an objective one, based on whether a "reasonable person" would understand the disclosure.  *Gilberg*, 913 F.3d at 1177.  Notably, the test is not whether a particular plaintiff alleges *he* was confused, or whether the plaintiff and his counsel can come up with creative arguments for alternative readings of the disclosure.  As in other contexts, language is "not ambiguous merely because the parties disagree on its interpretation." *Pac. Gas & Elec. Co. v. FERC*, 746 F.2d 1383, 1387 (9th Cir. 1984).

In an attempt to sew confusion and ambiguity into the clear language of the disclosure, Downing proffers alternative readings that he says would render the disclsoure confusing.  For example, he insists that language in the disclosure could be read as permitting Lowe's to obtain background reports regarding "*all* applicants' children/wards regardless of the information's relevance to the employment purpose."  Downing Br. at 18 n.2; *see also, e.g.*, *id.* at 2 (the disclosure "could be intended to permit Lowe's to obtain reports regarding applicants and their children/ward[s]").

But that is not what the disclosure says.  *See Flores v. Am. Seafoods Co.*, 335 F.3d 904, 910 (9th Cir. 2003) ("Contract terms are to be given their ordinary meaning" (quotation marks omitted)).  The disclosure never suggests that Lowe's seeks information regarding applicants and their children, nor does it suggest that it will obtain information that has nothing to do with an employment purpose.  Instead,

the disclosure informs the reader that Lowe's seeks a single background report and that the report might relate to information about the reader *or* the reader's child/ward—depending on who is applying for employment. *See* ER-57 ("[Lowe's] may obtain *a* 'background report' about you *or* your child/ward for employment purposes from a third-party consumer reporting agency." (emphases added)).

The meaning of the phrase "you or your child/ward" is clear from the context in which it is used. For example, the disclosure clearly states that Lowe's may obtain "*a* 'background report'" for employment purposes. ER-57 (emphasis added). In plain English, the phrase "*a* background report" means a single background report.[4] Similarly, the disclosure states that the background report will be "about you *or* your child/ward," ER-57 (emphasis added), not "you *and* your child/ward," as Downing seeks to read it. Finally, despite Downing's repeated references to multiple "children" and "wards" in his brief, the disclosure again refers to a single individual—one "child/ward"—not multiple "children/wards." Downing Br. at 2,

---

[4]   The third sentence uses the word "reports" to describe the different categories of information that might be included in the singular "background report" Lowe's may obtain. *See* ER-57 ("The reports may include information regarding your or your child's/ward's history, criminal history, social security verification, motor vehicle records, verification of your education or employment history, or other background check results."). As used in this context, it is clear that Lowe's is referring to various inputs to the ultimate "background report" regarding an applicant's education or employment history, criminal history, Social Security Number verification, and so on—not multiple reports regarding multiple individuals.

11, 16, 18 n.2.  Because Lowe's seeks to obtain a single background report, and because the disclosure states that that report will be about either the reader *or* the reader's child/ward, no reasonable reader could conclude that Lowe's is seeking background reports about the reader *and* the reader's children/wards.

Downing is also incorrect that the disclosure would allow Lowe's to obtain information that is unrelated to any employment purpose.  To the contrary, the disclosure clearly states that it is seeking background information "for employment purposes."  ER-57.  This phrase also eliminates any shred of ambiguity as to whose information Lowe's seeks—a reasonable reader would understand that Lowe's is seeking information regarding a job applicant, because the job applicant is the person whose background information is relevant to Lowe's employment purpose.

None of the cases that Downing cites supports a contrary conclusion.  For example, Downing cites *Gilberg* for the unremarkable proposition that a disclosure is unclear when it "contain[s] language that a reasonable person would not understand."  Downing Br. at 15 (quoting 913 F.3d at 1177).  In *Gilberg*, unlike here, the disclosure was unclear because it included a grammatically incoherent partial sentence without a subject, and also had confusing statements about state law.  913 F.3d at 1177.  The grammatical problems made it difficult to discern *any* meaning from the federal disclosure in the first place, and the state disclosures gave a false impression about the rights of applicants in states that were not listed.  *Id.*  Neither

24

of these reasons applies here—Lowe's disclosure includes no grammatical errors (let alone an error so egregious as to render the disclosure unclear) or any information regarding state law.

*Rubio v. Capital One Bank* is similarly inapposite. *See* 613 F.3d 1195 (9th Cir. 2010). *Rubio* dealt with the "clear[] and conspicuous[]" requirement in the Truth in Lending Act (TILA). *Id.* at 1203.[5] There, a creditor sent the plaintiff an advertisement for a credit card with a "fixed" APR, but also stated in a separate agreement that the creditor could (as it ultimately did) raise the APR at its discretion. *Id.* at 1197–98. Unsurprisingly, this Court held that the solicitation was not "clear and conspicuous" as to the meaning of the "fixed" APR it advertised. *Id.* at 1200–02. Here, by contrast, Downing does not allege that Lowe's took any action inconsistent with the plain language of the disclosure—for example, he does not plausibly allege that the disclosure misstated the conditions under which Lowe's would obtain his background report.

For these reasons, the language in the disclosure is not susceptible to the alternative reading Downing proposes—that Lowe's seeks to obtain multiple

---

[5] This Court has adopted the TILA "clear and conspicuous" analysis from *Rubio* in analyzing the clarity of a disclosure in the FCRA context. *See Gilberg*, 913 F.3d at 1176. But this Court has never held that the two statutes must be applied identically for all purposes. *See id.* at 1177 (assuming without deciding that clarity and conspicuousness are questions of law in the FCRA context, as in the TILA context).

background reports regarding applicants and their children. To the contrary, the plain language of the disclosure and common sense foreclose such a reading. Thus, Downing's claim that the "child/ward" language in the disclosure is unclear fails.

The district court agreed with Lowe's that the disclosure was clear, noting that "the references" to the reader's "child/ward" "simply disclose to the reader that Lowe's may obtain information about their child." ER-22. The district court then went on to explain that, even if Downing's strained alternative reading were correct, and Lowe's sought background information about applicants *and* their children, that would still not render the "entire [d]isclosure . . . confusing, misleading, or otherwise unclear as a result." ER-22. That is because it "is of no matter to the FCRA disclosure requirement" whose information Lowe's seeks to obtain. ER-22. "Rather, the Act requires only 'a clear and conspicuous disclosure . . . that a consumer report may be obtained for employment purposes.'" ER-22 (quoting 15 U.S.C. § 1681b(b)(2)(A)(i)).

Downing repeatedly suggests that the district court read the disclosure differently than Lowe's. *See, e.g.*, Downing Br. at 18. That is false. The passage of the district court's opinion that Downing relies on states the court's *alternative* explanation that Downing's claim fails even under his flawed reading of the disclosure. *See* ER-22 ("Even assuming such ambiguity exists, however, the Court

cannot find that the entire Disclosure is rendered confusing, misleading, or otherwise unclear as a result.").

That additional and alternative reason for rejecting Downing's claim was plainly correct. Language is not ambiguous simply because it applies more broadly than necessary to accomplish its purpose. In the context of contractual interpretation, "[a] contractual term is not ambiguous just because it is broad." *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 964 (9th Cir. 2010) ("Th[e] provision is admittedly broad, but it is not unclear or ambiguous."). The same is true for statutes. *Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 557 (9th Cir. 2016) ("[A] word or phrase is not ambiguous just because it has a broad general meaning" (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998))). And the same is true of broad regulations, which "may be applied to a particular factual scenario not expressly anticipated at the time the regulation was promulgated." *Or. Paralyzed Veterans of Am. v. Regal Cinemas, Inc.*, 339 F.3d 1126, 1133 (9th Cir. 2003).

Downing also argues that if this Court affirms, then prospective employers will be able to obtain the background reports of applicants' children "despite the [FCRA's] express prohibition against procuring such reports." Downing Br. at 18.

That is incorrect. The FCRA's clarity requirement has nothing to do with the substantive question of whether the FCRA allows a company to seek background reports involving applicants' children or wards (or whether employers can seek

27

parental consent for background reports when the applicant is a minor).  It simply requires clarity, regardless of whether the practice being disclosed is substantively permissible.  If, as Downing posits, an employer violates the FCRA by obtaining a background report concerning an applicant's children, then the applicant or the children could presumably bring a FCRA claim alleging that hypothetical violation. But Downing does not bring any such claim here.  And he fails entirely to explain how the purported overbreadth of an employer's background reports could violate the FCRA's clear and conspicuous requirement.

Next, Downing argues that the disclosure is "confusing as to the nature of the report being procured," Downing Br. at 19, because the second sentence's definition of "background report" references "credit," but the fourth sentence states that Lowe's will not seek credit information without additional authorization.  This argument is itself confusing and difficult to follow.

The second sentence in Lowe's disclosure comes directly from the FCRA's definition of a "consumer report":

| 15 U.S.C. § 1681a(d)(1) | Disclosure (ER-58) |
| --- | --- |
| any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living | any written, oral, or other communication of any information by a consumer reporting agency bearing on your or your child's/ward's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living |

28

It informs the reader of what information might be included in a standard consumer report. The fourth sentence informs the reader that Lowe's will *not* request credit information at this time. Thus, the disclosure helps the reader understand what information he is and is not authorizing Lowe's to obtain. *See Walker*, 953 F.3d at 1089 (consistent with the FCRA's requirements, a disclosure may "helpfully explain[]" "what type of information may be included in the 'consumer report'"). It is unclear why Downing thinks this helpful explanation would confuse an applicant.

Finally, Downing makes a throwaway argument that the word "worthiness" in the fourth sentence is somehow unclear. *See* Downing Br. at 19 ("It is unclear whether 'worthiness' encompasses some or all the information noted in the first paragraph or perhaps another nebulous category of information that Lowe's may review."). This is yet another attempt to manufacture ambiguity in a clear disclosure. Reasonable readers do not read individual words in isolation, as Downing and his counsel do here. *See, e.g.*, *King v. Burwell*, 576 U.S. 473, 486 (2015) (explaining in the context of statutory construction that "meaning—or ambiguity—of certain words or phrases may only become evident when placed in context" (quotation marks omitted)).

Here, in the context of the fourth sentence of Lowe's disclosure, it is obvious that "worthiness" refers to "credit worthiness." The term is used in a sentence that

relates solely to information regarding the applicant's credit, and informs the reader that Lowe's will not seek such credit information in this background report. *See* ER-58 ("Lowe's will not request any information related to your or your child's/ward's worthiness, credit standing, or credit capacity without providing you or your child/ward, separately, with information related to the use of that information and obtaining separate authorization from you to obtain such information, where required."). As with Downing's argument regarding the disclosure's use of the phrase "you or your child/ward," Downing's attempts to create ambiguity by isolating and misreading individual words and phrases fail when accounting for context.

\* \* \*

Read together, the disclosure's four sentences clearly explain to the reader that: (1) Lowe's may obtain a background report regarding the job applicant (whether the applicant is the reader or the reader's child/ward); (2) background reports can include several categories of information; (3) the background report that Lowe's will obtain will contain some of those categories of information; and (4) the background report will *not* include information relating to the applicant's credit. None of this information is extraneous, and, as the district court held, all of it falls squarely within this Court's holding in *Walker* regarding what is permissible in a FCRA disclosure. *See* ER-15–20. Further, as the district court held, the disclosure's

30

meaning is clear. "A reasonable, prospective employee is provided full notice of what Lowe's intends to do as it relates to the background report, and such employee is able to make an informed decision as to whether he or she wishes to authorize the action." ER-22. Thus, the disclosure satisfies the FCRA's standalone and clear and conspicuous requirements.

## II. Downing Lacks Standing To Challenge Any Of The Alleged Deficiencies He Raises On Appeal.[6]

As explained above, the disclosure is clear and it stands alone. But even if it were not, Downing lacks standing to allege the violations he asserts in this appeal.

A plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). "[A] plaintiff seeking damages for the violation of a statutory right must not only plausibly allege the violation but must also plausibly allege a 'concrete' injury causally connected to the violation." *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1172 (9th Cir. 2018). Moreover, a plaintiff must allege that he "personally ha[s] been injured, not that injury has been

---

[6] Article III standing "must be demonstrated at the successive stages of the litigation," including on appeal, "and if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (en banc) (cleaned up). Of course, "[t]he existence of Article III standing is not subject to waiver," and can be raised at any time—including by this Court *sua sponte*. *Id.*

suffered by other, unidentified members of the class to which [he] belong[s]." *Spokeo*, 578 U.S. at 338 n.6.

Here, without any alleged fact *connecting* his asserted FCRA violations (e.g., the "child/ward" language and the language related to credit information) to an injury Downing himself allegedly suffered, his arguments fail for lack of Article III standing. Downing does *not* argue that he was somehow confused as to whether Lowe's would obtain *his* background report or what information that report would include.[7] Rather, he argues that the disclosure was confusing as to whether Lowe's would obtain information regarding applicants' children and information regarding applicants' credit. He fails entirely to explain how these alleged violations harmed *him*. He does not allege, for example, that he was somehow harmed when Lowe's did not obtain his credit information. Nor does he allege that he has a child or ward whose information might have been at risk under his strained reading of the disclosure to include consumer reports about an applicant's children or wards.

Instead, parroting this Court's finding of an injury in *Syed*, Downing alleges that he was "confused by the disclosure," and that had he been presented with a "lawful" disclosure, he would not have signed it. ER-31, 34–35, 41, 44. This conclusory assertion is entitled to no weight at the motion-to-dismiss stage. *Ashcroft*

---

[7] Nor could he plausibly make such an allegation in light of his experience with the FCRA. *See supra* at 3 n.2.

*v. Iqbal*, 556 U.S. 662, 678 (2009). And the assertion makes no sense as applied to the alleged violations that Downing raises on appeal, since he has failed to explain why he signed Lowe's disclosure, but would have refused to sign a supposedly "lawful" one consistent with the line edits he argues Lowe's should have made.

## III. Downing Does Not Plausibly Allege That Any Alleged FCRA Violation Was Willful.

Even if Downing had plausibly alleged a FCRA violation or an Article III injury (which he did not), this Court should affirm on the alternative ground—not reached by the district court—that he did not and cannot plausibly allege that Lowe's *willfully* violated the FCRA. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (this Court "may affirm based on any ground supported by the record").

"Under the FCRA, only negligent or willful violations are actionable." *Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 671 (9th Cir. 2020); 15 U.S.C. § 1681n. On appeal, Downing has declined to pursue his negligence claim (which would require him to plausibly allege actual damages), and instead, argues only that Lowe's willfully violated the FCRA. Thus, this Court faces only the question of

whether Lowe's committed any purported FCRA violation willfully, and the clear answer is "no."[8]

A willful violation of the FCRA occurs when a defendant acts in "reckless disregard of the law." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 59 (2007). "[R]ecklessness requires 'a known or obvious risk that was so great as to make it highly probable that harm would follow.'" *Id.* at 69. This is an intentionally high bar—"[t]o prove a willful violation, a plaintiff must show not only that the defendant's interpretation was objectively unreasonable, but also that the defendant ran a risk of violating the statute that was substantially greater than the risk associated with a reading that was merely careless." *Marino*, 978 F.3d at 673.

"Under either the negligence or willfulness standard, when the applicable language of the FCRA is 'less than pellucid,' . . . a defendant will nearly always avoid liability so long as an appellate court has not already interpreted that language" to prohibit the defendant's conduct. *Marino*, 978 F.3d at 673–74 (quoting *Safeco*,

---

[8] Downing cannot resuscitate his negligence argument on reply. *EEOC v. Peabody W. Coal Co.*, 773 F.3d 977, 990 (9th Cir. 2014) ("[W]e do not consider claims that are not specifically and distinctly argued in the opening brief." (quotation marks omitted)). But even if he could, the argument would fail because (1) Downing cannot plausibly allege that Lowe's negligently violated the FCRA for the same reasons he cannot plausibly allege a willful violation; and (2) the Complaint lacks any factual allegations that could support a claim for actual damages. *See* 15 U.S.C. § 1681*o*(a)(1) (requiring actual damages for a claim for negligent noncompliance with the FCRA).

551 U.S. at 70).  The standard is akin to the standard for holding a defendant liable in the context of qualified immunity, where the inquiry is "whether an action was reasonable in light of legal rules that were 'clearly established' at the time." *Safeco*, 551 U.S. at 70 (citing *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

Here, Downing cannot come close to plausibly alleging that Lowe's willfully violated the FCRA.  The text of the FCRA is silent as to whether a prospective employer may include language in its disclosure informing the reader that the employer: (1) might obtain his or his child's/ward's information for employment purposes; and (2) will not seek his or his child's/ward's credit information without separate authorization.  *See, e.g.*, *Walker*, 953 F.3d at 1088 (noting that the FCRA "does not further define the term 'disclosure' or explain what information can be considered part of that 'disclosure'").  Thus, even assuming that Downing could show a violation (and he cannot), the statutory text is "less than pellucid" on the challenges Downing raises.  *Safeco*, 551 U.S. at 70.

Downing is incorrect that "judicial and administrative guidance" make clear that the language in Lowe's disclosure is unlawful.  Downing Br. at 29–30.  He notably fails to cite any case, and Lowe's is not aware of one, holding that the language in Lowe's disclosure, or any similar language, violates the FCRA.  Instead, Downing relies on the bare fact that the statute requires clear and standalone disclosures and that some courts have held that *entirely different* language violates

those requirements. He cites *Syed* and *Gilberg* for the proposition that *any* violation of the FCRA's standalone requirement is necessarily willful, because "the standalone requirement, as is at issue in the present case, is not subject to a range of plausible interpretations." Downing Br. at 29 (quotation marks omitted).

That is plainly incorrect. The *existence* of the standalone rule is not in dispute, but what exactly violates the rule is open to debate. Thus, not everything subsequently deemed unlawful is automatically a willful violation. Although the court in *Gilberg* quoted *Syed* in holding that an employer violates the FCRA's standalone requirement by including information about state law in a disclosure, the *Gilberg* court never even mentioned willfulness or decided whether the violation in that case was willful. *See* 913 F.3d at 1171.

Nor did *Syed* hold that *every* violation of the FCRA's standalone requirement is willful. Rather, the court determined the defendant acted willfully because the violation at issue there—the inclusion of a liability waiver in the disclosure—was so extreme and obvious that it constituted a "reckless disregard of" the defendant's "statutory duty" even in the absence of judicial and administrative guidance. 853 F.3d at 503–06. That was because the liability waiver fundamentally undermined the reader's ability to understand what he was agreeing to. *See id.* at 502 ("[A] job applicant could reasonably conclude that his signature was not consent to the

36

procurement of the consumer report, but to a broad release of the employer from claims[.]").

That is far from the case here. As the district court recognized, the closest analogous precedent—*Walker*—favors Lowe's and confirms that there was no violation at all. Indeed, in *Safeco*, on similar facts, the Supreme Court held that the defendant could hardly be said to have willfully violated the FCRA, where, as here, its position had a "sufficiently convincing justification to have persuaded the District Court to adopt it and rule in [the defendant's] favor." 551 U.S. at 70.

Downing is similarly incorrect that relevant administrative guidance condemns the language in Lowe's disclosure. *See* Downing Br. at 29–30. He conspicuously fails to cite any administrative guidance to support that assertion, and for good reason. The only conceivably relevant guidance from the Federal Trade Commission cuts in *Lowe's* favor, and certainly does not inform a reasonable employer that language similar to what Lowe's used is an obvious statutory violation. *See* FTC, Advisory Opinion to Coffey, 1998 WL 34323748, at *2 ("[S]ome additional information, such as a brief description of the nature of the consumer reports covered by the disclosure, may be included if the information does not confuse the consumer or detract from the mandated disclosure.").

Citing a lone, unpublished opinion from a district court in Pennsylvania, Downing seems to suggest that he can survive a motion to dismiss by "simply . . .

alleg[ing] sufficient *facts* to demonstrate the alleged violation, as pled, amounts to an objectively unreasonable reading of the statute." Downing Br. at 29 (emphasis added) (quoting *Moore v. Rite Aid Headquarters Corp.*, 2015 WL 3444227, at * 10 (E.D. Pa. May 29, 2015)). The alleged dispositive "facts" upon which Downing seeks to rely are that (1) "Lowe's has faced prior lawsuits regarding the FCRA's disclosure requirements and [(2)] the plain language of established law and clear judicial and administrative guidance counsels against including extraneous language." Downing Br. at 29–30. According to Downing, these "facts" support an inference of willfulness sufficient to withstand a motion to dismiss. *See id.*

For at least three reasons, Downing is mistaken.

*First*, Downing cannot demonstrate willfulness based on the existence of prior (unidentified) lawsuits against Lowe's challenging *different* disclosures. And Downing cites *no* case in which the Lowe's disclosure at issue here was found unlawful. Instead, as best as Lowe's can tell, Downing is referring to *Brown v. Lowe's Companies, Inc.*, No. 5:13-cv-79 (W.D.N.C.), which involved an entirely different disclosure that was challenged for entirely different reasons, and which settled without any merits adjudication. Other than the fact that both cases involved the FCRA and Lowe's, the alleged violations in *Brown* have nothing in common

with Downing's claims.  *See* Second Am. Compl., No. 5:13-cv-79 (W.D.N.C. Jan. 16, 2015), ECF 56 at 12, Ex. A.[9]

*Second*, Downing is incorrect to suggest that the determination of willfulness is necessarily a question of fact.  Willfulness can be decided as a matter of law where, as here, the answer is obvious based on text, precedent, and FTC guidance.  *See Syed*, 853 F.3d at 503 ("We may resolve this question as a matter of law, as the parties acknowledge."); *see also Safeco*, 551 U.S. at 71 (holding that there was no need for the court of appeals to remand the willfulness question for factual development because the defendant's misreading of the statute was not reckless).  Accordingly, courts "may, and often do, determine on the pleadings that a plaintiff failed to plead willfulness" when the defendant's "interpretation of the relevant statute . . . was not objectively unreasonable."  *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1282 (11th Cir. 2017).  Indeed, this Court has done the same.  *See Mitchell v. WinCo Foods, LLC*, 828 F. App'x 467 (9th Cir. 2020) (mem. op.).

*Third*, a defendant's "subjective bad faith" or "subjective intent" is irrelevant to whether its reading of the FCRA's requirements is "objectively [un]reasonable."

---

[9] The disclosure in *Brown* allegedly included a certification that the facts in the applicant's employment application were "true and accurate"; a liability waiver; and acknowledgments of a drug test, at-will employment, and that "Lowe's is an 'equal opportunity employer.'"  Second Am. Compl., No. 5:13-cv-79 (W.D.N.C. Jan. 16, 2015), ECF 56 at 12, Ex. A.

*Safeco*, 551 U.S. at 70 n.20 ("To the extent that [respondents] argue that evidence of subjective bad faith can support a willfulness finding even when the company's reading of the statute is objectively reasonable, their argument is unsound."). Thus, whatever facts Downing alleges about Lowe's subjective knowledge of the FCRA's requirements are irrelevant to the willfulness inquiry.

The outcome in this case is easily resolved as a matter of law given the text, this Court's decision in *Walker*, and the only on-point FTC guidance.

## Conclusion

For these reasons, the Court should affirm the district court's order, dismissing Downing's claims against Lowe's.

Dated: January 16, 2024

Respectfully submitted,

/s/ Jason C. Schwartz

Rachael Jensen
Gibson, Dunn & Crutcher LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone: (214) 698-3134
rjensen@gibsondunn.com

Jason C. Schwartz
*Counsel of Record*
Molly T. Senger
Matt Gregory
David Schnitzer
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
jschwartz@gibsondunn.com
msenger@gibsondunn.com
mgregory@gibsondunn.com
dschnitzer@gibsondunn.com

*Counsel for Defendant-Appellee Lowe's Home Centers, LLC*

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation of Ninth Circuit Rule 32-1(a) because it contains 9,383 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

I certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionately spaced 14-point Times New Roman typeface.

Dated: January 16, 2024

/s/ Jason C. Schwartz