No. 23-16102

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

JUSTIN DOWNING,

*Plaintiff-Appellant,*

v.

LOWE'S HOME CENTERS, LLC,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of Arizona
No. 3:22-cv-08159-SPL
Hon. Steven P. Logan

_____

**APPELLANT'S REPLY BRIEF**

_____

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso
ppeluso@woodrowpeluso.com
Taylor T. Smith
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E. Mexico Ave., Suite 300
Denver, CO 80210
(720) 213-0676

*Attorneys for Appellant Justin Downing*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION................................................................................1

ARGUMENT .......................................................................................4

    I.      LOWE'S DISCLOSURE CONTAINS EXTRANEOUS AND
           UNCLEAR LANGUAGE THAT VIOLATES BOTH THE FCRA'S
           STANDALONE DISCLOSURE REQUIREMENT AND THE
           CLEAR AND CONSPICUOUS DISCLOSURE
           REQUIREMENT....................................................................4

           A.      Lowe's Is Incorrect That Its Disclosure Stands Alone—In Fact,
                    Lowe's Admits That It Utilized A Combined Disclosure For
                    Adult Applicants And Minor Applicants That References
                    Extraneous, Future Credit-Related Disclosures. ........................4

           B.      The Presence Of Ambiguous References To The Applicant's
                    "Child/Ward," Together With Confusing, Conflicting
                    Statements, Precludes A Finding That The Lowe's Disclosure
                    Was "Clear" Within The Meaning Of The Act .........................8

    II.     DOWNING HAS STANDING TO CHALLENGE THE
           DISCLOSURE....................................................................13

    III.    DOWNING SUFFICIENTLY ALLEGED THAT LOWE'S
           WILLFULLY VIOLATED THE FCRA ...........................................17

CONCLUSION ..................................................................................24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Deschaaf v. Am. Valet &amp; Limousine Inc.*, 234 F. Supp. 3d 964 (D. Ariz. 2017).................................................................................. 23-24

*Fallay v. City & Cnty. of San Francisco*, 604 F. App'x 539 (9th Cir. 2015) .....................................................18

*Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d 1169 (9th Cir. 2019)...................................................................... 1, 6-7, 10, 13, 20

*Hawkins v. Kroger Co.*, 906 F.3d 763 (9th Cir. 2018) ...............................18

*Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669 (9th Cir. 2020)........19

*Mitchell v. WinCo Foods, LLC*, 743 F. App'x 889 (9th Cir. 2018).......16, 17

*Redi-Co, LLC v. Prince Castle, LLC*, 715 F. App'x 651 (9th Cir. 2018) .....................................................18

*Rivera v. Jeld-Wen, Inc.*, No. 21-CV-01816-AJB-AHG, 2022 WL 3219411 (S.D. Cal. Aug. 9, 2022) ...................................................................16

*Robrinzine v. Big Lots Stores, Inc.*, 156 F.Supp.3d 920 (N.D. Ill. 2016)..................................................24

*Rotor v. Signature Consultants, LLC*, No. 18-CV-07526-JST, 2019 WL 3246535 (N.D. Cal. July 19, 2019) ..................................................16

*Rubio v. Cap. One Bank*, 613 F.3d 1195 (9th Cir. 2010) ...........................10

*Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867 (9th Cir. 2022) ............................................................18

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007).............................. 18-19

*Singleton v. Domino's Pizza, LLC*, Civil Action No. DKC 11-1823, 2012 WL 245965 (D. Md. Jan. 25, 2012) ..................................................24

*Soto v. O Reilly Auto Enterprises, LLC*, Case No. EDCV 20-214 JGB (KKx), 2020 WL 5215298 (C.D. Cal. June 11, 2020) ......................16

*Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017).........................14-16, 20-23

*Walker v. Fred Meyer, Inc.*, 953 F.3d 1082 (9th Cir. 2020)........ 6, 12, 20-21

## Statutes

15 U.S.C. § 1681a ...........................................................................19

15 U.S.C. § 1681b........................................................... 1, 8, 11, 19

15 U.S.C. § 1681g...........................................................................6

## Rules

FED. R. CIV. P. 9(b) ........................................................................23

**INTRODUCTION**

As Downing stated in his Opening Brief, the district court committed reversible error when it dismissed his claim brought under § 1681b(b)(2), *et seq.* of the Fair Credit Reporting Act ("FCRA" or "Act"). Defendant-Appellee Lowe's Home Centers, LLC's ("Appellee" or "Lowe's") FCRA consumer report disclosure form ("Disclosure" or "Disclosure Form") is not clear and conspicuous (as required by the Act) and it contains extraneous information that violates the statute's standalone disclosure requirement.

In light of both the plain language of the Act and Ninth Circuit precedent, Lowe's attempts to downplay its violations are ineffective. Indeed, Lowe's arguments rest on its own self-serving interpretations of its Disclosure, disregarding that the language must be interpreted as a "reasonable reader" would understand the form. *Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d 1169, 1177 (9th Cir. 2019). When viewed in this light, Lowe's arguments quickly fall apart.

In its Answering Brief, Lowe's urges the Court to overlook its Disclosure's reference to future consumer report disclosures, attempting to rewrite the second paragraph of its Disclosure as solely referring to future authorizations (and not disclosures). Fortunately, the plain language of the Disclosure tells a different story. In full, the Disclosure's second paragraph states:

Lowe's will not request any information related to your or your child's/ward's worthiness, credit standing, or credit capacity without providing you or your child/ward, separately, with information related to the use of that information and obtaining separate authorization from you to obtain such information, where required.

(ER-33–34; ER-57–58.)

Thus, the Disclosure's plain language makes clear that Lowe's would provide separate extraneous future *disclosures*, specifically "information related to the use of that information", not just separate authorizations, before obtaining credit-related information.

Lowe's also attempts to justify its inclusion of the "child/ward" language by asserting that the Disclosure is a combined disclosure for minor applicants and adult applicants and that Lowe's would only ever procure "one report for *either* the reader *or* the child/ward on whose behalf the reader is reviewing the disclosure." This argument misses the point, as the FCRA prohibits the inclusion of any extraneous information at all. In fact, in making its argument, Lowe's essentially concedes that the Disclosure includes unnecessary surplusage for both categories of applicants. Stated another way, if an adult applicant receives the form, the form contains extraneous information related to inapplicable minors, and if a minor applicant receives the form, it contains extraneous information related to inapplicable adults. Either way, the Disclosure refers to irrelevant information, making it unclear. It is worth noting how easy it would be for Lowe's to clear up

the confusion: it could simply have one disclosure form that it provides to adult applicants, and another disclosure form that it provides to minor applicants.

Lowe's further claims that its inclusion of the "child/ward" language is not ambiguous or unclear because the Disclosure supposedly clarifies that only a single report would be procured regarding either the applicant or the child/ward. But the number of reports ultimately procured is irrelevant, the issue is that the Disclosure is unclear as to *whose* information will be included in that report. On its face, the "child/ward" language renders the Disclosure unclear as to whether Lowe's will obtain a report about the applicant or the applicant's child/ward, even if such children are not seeking employment with Lowe's. The existence of the ambiguity renders the Disclosure unclear in violation of the Act's "clear and conspicuous" mandate.

Lowe's residual arguments fare no better. It claims—for the first time—that Downing lacks standing to challenge the disclosure because (according only to Lowe's) he must allege that he was harmed "when Lowe's did not obtain his credit information" or that "he has a child or ward whose information might have been at risk." But this is not the test. Downing pleaded, in line with the standard set out in *Syed*, that he was "confused" by the Disclosure and that "he would not have signed it" had a lawful Disclosure been provided. He is not required to plead anything further to enjoy standing.

Finally, Lowe's claim that Downing failed to allege a willful violation. As a preliminary matter, the district court made no findings regarding the issue of willfulness and it should not be decided for the first time on appeal. Nevertheless, Lowe's arguments fail. The FCRA's disclosure requirements are not "less than pellucid," as Lowe's claims. Rather, at least three (3) separate panels of this Court have concluded that the FCRA is "pellucid" and precludes the inclusion of any extraneous information. As such, if Lowe's violations are found to violate the Act, then its actions were willful.

For these reasons and as explained further below, the district court's order granting Lowe's motion to dismiss with prejudice should be reversed, and the case should be remanded.

## ARGUMENT

## I. LOWE'S DISCLOSURE CONTAINS EXTRANEOUS AND UNCLEAR LANGUAGE THAT VIOLATES BOTH THE FCRA'S STANDALONE DISCLOSURE REQUIREMENT AND THE CLEAR AND CONSPICUOUS DISCLOSURE REQUIREMENT

### A. Lowe's Is Incorrect That Its Disclosure Stands Alone—In Fact, Lowe's Admits That It Utilized A Combined Disclosure For Adult Applicants And Minor Applicants That References Extraneous, Future Credit-Related Disclosures.

The first issue raised by Lowe's in its Answering Brief is whether its Disclosure violates the FCRA's standalone disclosure requirement. It clearly does. The form provided to Downing and other applicants is overshadowed by

extraneous information and therefore fails to stand alone—it is plainly unlawful.

Yet to hear Lowe's tell it, its Disclosure is compliant. (Ans. Br. at 15-21.) To make this argument, Lowe's first attempts to reframe Downing's position by claiming that he asserts that "the final (fourth) sentence of the disclosure, which explains that Lowe's will not seek an applicant's credit information without additional authorization, is extraneous and distracts from the disclosure." (*Id.* at 17-18.) Then, Lowe's asserts that the inclusion of the child/ward language is permissible because it "pertains to only one report for *either* the reader *or* the child/ward on whose behalf the reader is reviewing the disclosure." (*Id.* at 21 (emphasis in original)). Both assertions miss the mark.

To start, Downing does not and has never claimed that the use of a separate authorization would violate the standalone disclosure rule. This misunderstands his argument and misconstrues the second paragraph of the Disclosure, which reads:

> Lowe's will not request any information related to your or your child's/ward's worthiness, credit standing, or credit capacity without providing you or your child/ward, separately, *with information related to the use of that information* **and** obtaining *separate authorization* from you to obtain such information, where required.

(ER-33–34; ER-57–58 (emphasis added).) The plain language of Lowe's Disclosure therefore states that Lowe's will supply additional "information related to the use of that information" (*i.e.* another disclosure) and seek a separate authorization for that additional, future disclosure. Hence, the Disclosure Form at

issue informs applicants that they may receive future disclosures **and** future authorizations, not just future authorizations, as Lowe's now claims.

Moreover, the second paragraph of the Disclosure must naturally be read in conjunction with the first paragraph. Together, Lowe's discloses in the first paragraph that it will procure information concerning credit worthiness, then in the second paragraph it discloses that it will not procure credit information unless it provides a separate <u>disclosure</u> and seeks a separate <u>authorization</u>. While it is true that credit information can be included in a consumer report under the FCRA, taken together, the paragraphs make clear that *this* Disclosure will never be used to obtain credit information. But Lowe's included the language anyway. Put simply, because this Disclosure will never be used to obtain credit information, its references to extraneous, future disclosures regarding credit information are surplusage and ultimately detract from *this* Disclosure. *See Gilberg*, 913 F.3d at 1176 ("even 'related' information may distract or confuse the reader").

Lowe's reliance on *Walker* offers it no support. In *Walker*, this court found that a disclosure's reference to applicants' rights to inspect their credit files, which is a FCRA-protected right, *see* 15 U.S.C. § 1681g, *et seq.*, ran afoul of the Act's standalone provision because the language pulls "'the applicant's attention away from his privacy rights protected by the FCRA by calling his attention to the rights' that he has to inspect GIS's files." *Walker v. Fred Meyer, Inc.*, 953 F.3d

1082, 1090 (9th Cir. 2020) (citing *Syed*, 853 F.3d at 502; *Gilberg*, 913 F.3d at 1175–76). Hence, even if the disclosure includes helpful information regarding an applicant's FCRA rights, it can still run afoul of the standalone provision. Here, because the Disclosure will never be used to obtain credit information, its reference to potential future extraneous disclosures regarding credit worthiness is neither helpful nor related. The language can only pull the applicants' attention away from the rights implicated by *this* Disclosure.

Next, Lowe's turns to the "child/ward" language and attempts to justify its inclusion by claiming that the Disclosure "pertains to only one report for *either* the reader *or* the child/ward on whose behalf the reader is reviewing the disclosure." (Ans. Br. at 21.) In the process, Lowe's offers up a reading of its own Disclosure that tacitly admits that it includes unrelated, extraneous information for two separate groups of applicants. On the one hand, for minor applicants, the disclosure includes extraneous language regarding Lowe's obtaining information regarding their parents despite supposedly having no intention to do so. On the other hand, for adult applicants (such as Downing), the disclosure includes extraneous language purporting to authorize Lowe's to obtain information regarding their child/ward. Regardless of which way the Disclosure is read, it contains extraneous information that is unrelated to the reader.

Lowe's is similarly incorrect that Downing's argument hinges on whether

the Disclosure "could be read as authorizing Lowe's to obtain background reports regarding applicants *and* their children." (Ans. Br. at 20). Regardless of whether the background report includes the information concerning the applicant, their child/ward, or both is not determinative. As Downing explained in his Opening Brief, the FCRA specifically limits *whose* information can be included in an employment-related consumer report to <u>only</u> the applicant-consumer. *See* 15 U.S.C. § 1681b(b)(2)(A). But under the current Disclosure, Lowe's would have the ability to obtain a report regarding either the reader or their child/ward—at its own choosing. And regardless of who the applicant is, the form contains surplusage regarding individuals whose information is not permitted to be included in an employment-related consumer report.

Because the Disclosure contains unrelated, extraneous information, the Disclosure fails to stand-alone within the meaning of § 1681b(b)(2)(A)(i).

### B. The Presence Of Ambiguous References To The Applicant's "Child/Ward," Together With Confusing, Conflicting Statements, Precludes A Finding That The Lowe's Disclosure Was "Clear" Within The Meaning Of The Act.

Lowe's next asserts that the inclusion of the "child/ward" language does not render the Disclosure unclear because "no reasonable reader could conclude that Lowe's is seeking background reports about the reader *and* the reader's children/wards." (Ans. Br. at 24.) Lowe's also claims that the second paragraph is not confusing because it "informs the reader that Lowe's will not request credit

information at this time." (*Id.* at 29.) Lowe's attempts to impute clarity after the fact should be rejected.

As an initial matter, Lowe's attempts to brush off its use of the "child/ward" language by asserting that the Disclosure makes clear that it will only obtain "a single background report and that the report might relate to information about the reader or the reader's child/ward—depending on who is applying for employment." (*Id.* at 23.) Right out of the gate, this "singular report" argument stumbles because, as Lowe's acknowledges in footnote 4 of its Brief, the third sentence discloses that it will obtain "***reports***". (*Id.* at 23, n.4; *see also* ER-33–34; ER-57–58.) Lowe's attempts to explain away the plural "reports" by claiming that it describes "different categories of information" that might be included in the background report, such as "an applicant's education or employment history, criminal history, Social Security Number verification." (Ans. Br. at 23, n.4) Far from help its position, Lowe's supplies further confusion. Apparently, the word "report," as used in the disclosure, is susceptible to separate meanings.

But the larger problem with Lowe's "singular report" argument is that it ignores—as the district court found—that the report could include information regarding the applicant, their child/ward, or both. (ER-22.) Nothing in the disclosure would preclude Lowe's from obtaining a report regarding any of the previously mentioned individuals. The problem is not that Lowe's may ultimately

procure only a single report. That is immaterial. The problem is that it is unclear *whose* information will be contained within that report.

Additionally, Lowe's attempts to distinguish *Rubio v. Capital One Bank*—a Truth and Lending Act case whose clear and conspicuous analysis this Court adopted with respect to the FCRA provisions at issue here in *Gilberg*, 913 F.3d at 1176—fall flat. (Ans. Br. at 25.) To hear Lowe's tell it, the *Rubio* court found that the term "fixed" in a credit card advertisement was not "clear and conspicuous" because the creditor also "stated in a separate agreement that the creditor could (as it ultimately did) raise the APR at its discretion." (*Id.*) But that's not accurate. The *Rubio* court did not find that the disclosure was unclear because the creditor did, in fact, raise the interest rate. Rather, the disclosure flunked the "clear and conspicuous" requirement because the term "fixed" was susceptible to competing interpretations. *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1201-02 (9th Cir. 2010). The term could have meant either that the "rate will not be changed" or that the rate is "not tied to an index". *Id.* at 1202. Ultimately, the term ran afoul of the "clear and conspicuous" requirement because it was susceptible to more than one interpretation. *See id.* ("it is precisely because reasonable consumers can interpret an ambiguous disclosure in more than one way that such a disclosure cannot be clear and conspicuous.").

The same is true here. The Disclosure is susceptible to multiple

interpretations. It could be read to apply only to minor applicants (as Lowe's now claims) or it could be read to authorize Lowe's to obtain consumer reports regarding the applicant's child/ward. While Lowe's contends that the use of the phrase "employment purposes" would lead a reasonable reader to understand that the report relates to "a job applicant" and not their child (Ans. Br. at 24), it ignores that the district court repeatedly interpreted the child/ward language to relate to the "applicant's 'child/ward'," and even stated that "the references simply disclose to the read that Lowe's may obtain information about their child". (*See* ER-16-17; ER-20-22.) The fact that the district court and Lowe's disagree on the interpretation of this supposedly-clear language demonstrates that it is open to multiple interpretations and, therefore, is unclear.

Lowe's is also incorrect when it asserts that the "FCRA's clarity requirement has nothing to do with the substantive question of whether the FCRA allows a company to seek background reports involving applicants' children or wards." (Ans. Br. at 27.) As explained in the Opening Brief, the provision at issue here, 15 U.S.C. § 1681b(b)(2)(A), expressly prohibits employers, such as Lowe's, from procuring reports regarding "any consumer" unless the consumer is provided a "clear and conspicuous" disclosure and has authorized the procurement. *Id.* Hence, contrary to Lowe's claim, § 1681b(b)(2)(A) limits employment-related consumer reports to only the consumer-applicant who reviews and authorizes the disclosure

and no one else. And the inclusion of references to individuals (such as an applicant's child/ward) whose information is expressly prohibited from being included in the report can only serve to confuse and distract.

Next, Lowe's turns to the final paragraph and attempts to add clarity after the fact. That is, Lowe's concedes that its use of "worthiness" in the final paragraph is inaccurate and instead claims that "it is obvious 'worthiness' refers to 'credit worthiness" because it is used in a sentence relating to the applicant's credit. (Ans. Br. at 29-30.) But the omission is emblematic of Lowe's inattentive authorship. The question is whether Lowe's Disclosure as written is "clear" to a job applicant, not whether Lowe's can offer up an explanation in an appellate brief to justify or expound upon its use of specific terms.

Relatedly, Lowe's claim that the last paragraph of its Disclosure provides "helpful" information by informing "the reader that Lowe's will *not* request credit information" likewise ignores its confusing presentation. (*Id.* at 29.) While it is true that employers may include an explanation of what the report will entail, "any such explanation should not be confusing or so extensive as to detract from the disclosure." *Walker*, 953 F.3d at 1089, n.8. As previously explained, the Disclosure's explanation of what the report will entail (even if related to the FCRA's purpose) is confusing. Indeed, in the first paragraph, Lowe's discloses that it will obtain credit information, and in the second paragraph, it states that it will

not procure credit information without first providing a separate disclosure and a separate authorization. (ER-33–34; ER-57–58.) The inclusion of conflicting statements can only serve to confuse the reader.

As a final point here, the last paragraph of Lowe's Disclosure is analogous in at least one respect to the disclosure at issue in *Gilberg*, which this Court held was not clear and conspicuous and violated the FCRA. The *Gilberg* disclosure "suggest[ed] that there may be some limits on the all-encompassing nature of the authorization, but it does not identify what those limits might be." *Gilberg*, 913 F.3d at 1177. Here, the final paragraph of the Lowe's Disclosure states that "Lowe's will not request any information . . . without providing . . . information related to the use of that information and obtaining separate authorization from you to obtain such information, where required", but it does not identify where such disclosure and authorization may be required.

In the end, the Disclosure's ambiguous and confusing references to applicants' children as well as its conflicting statements regarding "worthiness" and "credit worthiness" renders the Disclosure "unclear" under the Act, and the district court's Order dismissing the claims against Lowe's should be reversed.

## II. DOWNING HAS STANDING TO CHALLENGE THE DISCLOSURE

Pivoting, Lowe's briefly raises—for the first time on appeal—that Downing lacks Article III standing. (Ans. Br. at 31-33.) To hear Lowe's tell it, "Downing

does not argue that he was somehow confused as to whether Lowe's would obtain his background report or what information that report would include." (*Id.* at 32.) Relying on no case law to support its flawed position (because there is none), Lowe's posits that Downing must allege that he was harmed "when Lowe's did not obtain his credit information" or that "he has a child or ward whose information might have been at risk". (*Id.*) This argument ignores controlling precedent.

In *Syed*, this Court summarized standing in the context of the FCRA's disclosure provision as follows:

> A plaintiff who alleges a "bare procedural violation" of the FCRA, "divorced from any concrete harm," fails to satisfy Article III's injury-in-fact requirement. *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S.Ct. 1540, 1549, 194 L.Ed.2d 635 (2016). However, Syed alleges more than a "bare procedural violation." The disclosure requirement at issue, 15 U.S.C. § 1681b(b)(2)(A)(i), creates a right to information by requiring prospective employers to inform job applicants that they intend to procure their consumer reports as part of the employment application process. The authorization requirement, § 1681b(b)(2)(A)(ii), creates a right to privacy by enabling applicants to withhold permission to obtain the report from the prospective employer, and a concrete injury when applicants are deprived of their ability to meaningfully authorize the credit check. By providing a private cause of action for violations of Section 1681b(b)(2)(A), Congress has recognized the harm such violations cause, thereby articulating a "chain[ ] of causation that will give rise to a case or controversy." *See Spokeo*, 136 S.Ct. at 1549 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 580, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (Kennedy, J., concurring)).

*Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir. 2017).

The Court went on to find that the allegation that Syed "discovered that

Defendant M-I had procured and/or caused to be procured a 'consumer report' regarding him for employment purposes based on the illegal disclosure and authorization form" was sufficient for standing, reasoning:

> This allegation is sufficient to infer that Syed was deprived of the right to information and the right to privacy guaranteed by Section 1681b(b)(2)(A)(I)–(ii) because it indicates that Syed was not aware that he was signing a waiver authorizing the credit check when he signed it. Drawing all reasonable inferences in favor of the nonmoving party, we can fairly infer that Syed was confused by the inclusion of the liability waiver with the disclosure and would not have signed it had it contained a sufficiently clear disclosure, as required in the statute. Therefore, Syed did allege a concrete injury and has Article III standing to bring this lawsuit. *See Thomas v. FTS USA, LLC*, 193 F.Supp.3d 623, 628–638 (E.D. Va. 2016) (holding that an improper disclosure under 15 U.S.C. § 1681b(b)(2)(A) causes "a concrete injury sufficient to confer standing").

*Id.* at 499–500.

Downing pled that he "was confused by the disclosure, and had a lawful disclosure been provided, [he] would not have signed it."[1] (ER-31.) This is all that *Syed* requires. Following *Syed*, allegations that the consumer was confused by the disclosure and that they would not have authorized the procurement have been

---

[1] Lowe's attempt to use Downing's prior lawsuit to claim that he did not suffer any harm and therefore lacks standing is improper. (Ans. Br. at 32, n.7.) The disclosure in the prior case is completely distinct from the disclosure here. (*Compare Downing v. Haven Health Group, LLC*, Case No. 3:18-cv-08109-DWL, ECF 1, pg. 16, *with* ER-33–34; ER-57–58.) In any case, Lowe's fails to explain how the receipt of one confusing and indecipherable disclosure in the past someone renders the Disclosure in this case standalone or clear. It does not.

found to be sufficient to state a claim. *See Rivera v. Jeld-Wen, Inc.*, No. 21-CV-01816-AJB-AHG, 2022 WL 3219411, at *6 (S.D. Cal. Aug. 9, 2022); *Soto v. O Reilly Auto Enterprises, LLC*, Case No. EDCV 20-214 JGB (KKx), 2020 WL 5215298, at *3 (C.D. Cal. June 11, 2020); *Rotor v. Signature Consultants, LLC*, No. 18-CV-07526-JST, 2019 WL 3246535, at *4 (N.D. Cal. July 19, 2019) ("numerous courts from this district have concluded that Syed 'requires some allegation of actual harm, e.g., that plaintiff was 'confused' by the disclosure or that she would not have signed the authorization had it been presented in a FCRA-compliant format.'" (collecting cases)).

Notwithstanding *Syed*'s clear holding, Lowe's asks the Court to go further by requiring Downing to allege that "he was somehow harmed when Lowe's did not obtain his credit information" or that "he has a child or ward whose information might have been at risk". (Ans. Br. at 32.) This position is unsupported. Even in *Syed*, there were no allegations that the plaintiff was harmed by the liability release. *See Syed*, 853 F.3d at 499. Rather, the harm stemmed from the confusion that resulted because the liability waiver overshadowed the consumer report disclosure. *Id.* The same is true here. Downing alleges that he was confused by the extraneous information—which pulled his attention away from the disclosure at issue. This is all that is needed for him to suffer an injury in fact. *See Mitchell v. WinCo Foods, LLC*, 743 F. App'x 889 (9th Cir. 2018). And even if this

Court decides that Downing did not plead facts sufficient to support an inference of confusion, Downing should be granted leave to amend. *See id.*

Because Downing pleaded that he was confused by the Disclosure and would not have authorized the procurement of his report, he has Article III standing to bring this lawsuit.

## III. DOWNING SUFFICIENTLY ALLEGED THAT LOWE'S WILLFULLY VIOLATED THE FCRA

Lowe's closes by asserting that Downing failed to allege a willful violation because the FCRA's disclosure provision is "less than pellucid" since it does not specifically state that Lowe's could not include the "child/ward" language or reference future, unrelated disclosures regarding credit information. (Ans. Br. at 34-35.) Though this issue was not decided by the district court and is not properly before this Court, *Syed* forecloses Lowe's argument that the statute was less than pellucid in any case.

As an initial matter, the district court did not address the issue of whether Downing sufficiently alleged willfulness. (*See* ER-15 ("The Court need not reach Defendant's arguments with respect to whether Plaintiff sufficiently alleged willfulness or negligence because the Court finds that, as a matter of law, the Disclosure in this case does not violate the FCRA.").) As such, the issue is

generally not appropriate for consideration for the first time on appeal, and the Court should decline to do so here.[2] *See Redi-Co, LLC v. Prince Castle, LLC*, 715 F. App'x 651, 652 (9th Cir. 2018) ("We decline to reach the additional arguments Prince Castle, LLC raises as alternative grounds to affirm. The district court did not address these issues, so we remand the case for consideration of these issues in the first instance in the district court."); *Hawkins v. Kroger Co.*, 906 F.3d 763, 773, n.11 (9th Cir. 2018) (citing *Winter v. United States*, 244 F.3d 1088, 1092 (9th Cir. 2001)); *Fallay v. City & Cnty. of San Francisco*, 604 F. App'x 539, 541 (9th Cir. 2015).

But to the extent the Court chooses to opine on this question, Lowe's reliance on *Marino* and *Safeco* is misplaced. In *Safeco*, the Supreme Court held that a willful violation of the FCRA is one committed knowingly or with "reckless disregard" for its duties under the Act. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007). Under *Safeco*, a reckless violation of the statute includes actions taken that constitute an unreasonable reading of the statute and creates a substantially greater risk of violation than the risk associated with a careless

---

[2] Along the same lines, Downing did not waive his argument that Lowe's violations also constitute a negligent violation of the Act. *See Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 907 (9th Cir. 2022) ("[An appellant] does not waive a challenge to any ground for the district court's ruling in its opening brief that was not relied on in the district court's order."). This is a separate reason to reject Lowe's arguments with respect to willfulness.

reading. *Id.* at 69–70. The Supreme Court found that Safeco did not recklessly violate the FCRA because its reading of the "less-than-pellucid" statutory provision at issue, 15 U.S.C. § 1681a(k)(1)(B)(i), was not objectively unreasonable, and no available guidance counseled against its interpretation. *Id.* at 70.

Similarly, in *Marino*, the Ninth Circuit held that a creditor did not willfully violate the FCRA by obtaining credit reports about consumers whose mortgage loans had been discharged in bankruptcy. *Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 675–76 (9th Cir. 2020). The *Marino* court found that Ocwen did not recklessly violate the FCRA based on its reading of the "less than pellucid" statutory provision at issue, 15 U.S.C. § 1681b(f)(1). *Id.* at 673–74. There, the court affirmed the district court's grant of summary judgment because a reasonable fact finder could not conclude that Ocwen lacked a permissible purpose to obtain the plaintiff's credit reports. *Id.* at 676.

Unlike the provisions at issue in *Safeco* and *Marino*, the FCRA's standalone disclosure provision is "pellucid" and does not invite different interpretations. Indeed, this Court has repeatedly held that the statutory language is unambiguous and not open to multiple interpretations. As the Ninth Circuit explained in *Syed*, the language of Section 1681b(b)(2)(A) is "unambiguous[]" in requiring a document that consists *solely* of the disclosure:

Where congressional intent "has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982) (internal quotation marks omitted). And when "the meaning of the words seems to us to be intelligible upon a simple reading, ... we shall spend no time upon generalities concerning the principles of [statutory] interpretation." *United States v. M.H. Pulaski Co.*, 243 U.S. 97, 106, 37 S.Ct. 346, 61 L.Ed. 617 (1917).

The ordinary meaning of "solely" is "[a]lone; singly" or "[e]ntirely; exclusively." American Heritage Dictionary of the English Language 1666 (5th ed. 2011).

*Syed*, 853 F.3d at 500. In so holding, the *Syed* court rejected the defendant's argument that the 15 U.S.C. § 1681b(b)(2)(A) was "less than pellucid." *Id.* at 503. The court ultimately held the FCRA "unambiguously" prohibits employers "from including a liability waiver on a disclosure." *Id.* In *Gilberg*, this Court clarified that *Syed*'s holding was not limited to liability waivers, but rather applied to "any surplusage." *Gilberg*, 913 F.3d at 1175.

Later, in *Walker*, this Court reiterated the finding that the standalone disclosure requirement forbids any surplusage, explaining:

[A]s to the standalone disclosure requirement, we noted in *Syed* that "[t]he ordinary meaning of 'solely' is '[a]lone; singly' or '[e]ntirely; exclusively,' " and we held that the standalone requirement was unambiguous and meant what it said. *Syed*, 853 F.3d at 500–01 (quoting American Heritage Dictionary of the English Language 1666 (5th ed. 2011)); *see Gilberg*, 913 F.3d at 1175 (explaining the basis for *Syed*'s conclusion that "the statute meant what it said"). Thus, Ninth Circuit precedent reads the FCRA as mandating that a disclosure form contain nothing more than the disclosure itself. Simply put, "the [disclosure] form should not contain any extraneous

information." *See* U.S. Fed. Trade Comm'n, Advisory Opinion to Hauxwell, 1998 WL 34323756, at *1 (June 12, 1998).

*Walker*, 953 F.3d at 1087.

Hence, *Syed*, *Gilberg*, and *Walker* all foreclose Lowe's position that the standalone disclosure provision at issue is less than pellucid. They find the exact opposite. In reality the statute is crystal-clear. Moreover, these decisions foreclose Lowe's argument that the "text of the FCRA is silent as to whether a prospective employer may include language in its disclosure" regarding its procurement of an applicant's "child's/ward's information" and that it will not seek "credit information" without a separate disclosure. (Ans. Br. at 35.)

In other words, Lowe's makes the predictable argument that its violation cannot be willful since no other court has addressed its particular way of violating the statute. This logic is flawed. A lack of prior judicial guidance on a particular method of violating the law does not immunize parties from liability for statutory damages. There need not be "guidance" to counsel against actions that constitute an objectively unreasonable interpretation of the Act. Rather, "[a]n employer 'whose conduct is first examined under [a] section of the Act should not receive a pass because the issue has never been decided.'" *Syed*, 853 F.3d at 506. Indeed, the FCRA also does not state that liability waivers cannot be included in a Disclosure, but the *Syed* court found that its inclusion constituted a willful violation notwithstanding a "lack of 'guidance'". *Id.* at 504. Put simply, because the

statutory text at issue is unambiguous and forecloses any implied exceptions, there need not be guidance to counsel against the inclusion of every possible extraneous piece of information. Companies should not be let off the hook each time they find a new way to violate the statute.

Because the provision at issue is "pellucid", Downing's allegations sufficiently establish a willful violation. And in any event, judicial guidance *was* in place to counsel against Lowe's actions. *Syed*, *Gilberg*, and *Walker* were firmly the law when Lowe's provided the Disclosure at issue. Downing also alleged that Lowe's had faced a prior lawsuit regarding the same FCRA provisions. (ER-41–42; ER-45.) Taken together and viewed in a light most favorable to Downing, the allegations make clear that Lowe's was aware of its obligations under the Act, and that it took actions that could be considered both in "reckless disregard" of its statutory duty and that were "known to violate the Act." *Syed*, 853 F.3d at 503 ("willfulness reaches actions taken in 'reckless disregard of statutory duty,' in addition to actions 'known to violate the Act.'" (citing *Safeco*, 551 U.S. at 56–57, 127 S.Ct. 2201)). Such allegations are sufficient to state a claim for a willful violation of the Act.

Lowe's residual attacks on Downing's pleadings miss the mark. First, it takes issue with Downing alleging that it has faced a prior lawsuit regarding its employment disclosures by claiming that the prior lawsuit challenged "different

disclosures." (Ans. Br. at 38.) But Downing doesn't allege that the prior suit involved the same disclosure. Rather, the prior suit demonstrates that Lowe's was on notice that its disclosure must comply with the relevant provision, and despite the prior lawsuit, it took actions that were either recklessly or knowingly ran afoul of the FCRA.

Lowe's second and third attacks on Downing's pleadings overlap. Lowe's argues that "willfulness" is not "necessarily a question of fact" and a defendant's "subjective bad faith" or "subjective intent" is irrelevant where the reading of the Act is "objectively [un]reasonable." (Ans. Br. at 39.) On this point, Downing agrees that in certain cases willfulness can be decided on the pleadings where the statute unambiguously forecloses the inclusion of extraneous information. *See Syed*, 853 F.3d at 505. As explained above, the decision to include extraneous information in the disclosure constitutes an objectively unreasonable interpretation of the Act. But to the extent that Lowe's interpretation is not found to be objectively unreasonable, then Lowe's subjective interpretation of the statute may be relevant. *See id.* at 506, n.7.

And in a scenario where subjective intent is relevant, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Courts generally find that allegations that a defendant was aware of its duties but failed to comply are sufficient to avoid dismissal. *See*

*Deschaaf v. Am. Valet &amp; Limousine Inc.*, 234 F. Supp. 3d 964, 971 (D. Ariz. 2017) (finding allegations that the Defendant was informed of its duties under the FCRA was sufficient to state a claim for willfulness*); Singleton v. Domino's Pizza, LLC*, Civil Action No. DKC 11-1823, 2012 WL 245965, at *4 (D. Md. Jan. 25, 2012) ("[A]ssertions that a defendant was aware of the FCRA, but failed to comply with its requirements, are sufficient to support an allegation of willfulness and to avoid dismissal."); *Robrinzine v. Big Lots Stores, Inc.*, 156 F.Supp.3d 920, 929-30 (N.D. Ill. 2016).

The FCRA's stand-alone requirement is unambiguous and is not susceptible to multiple interpretations. As such, Lowe's inclusion of extraneous information in its Disclosure is objectively unreasonable, if not a knowing violation of the Act.

## CONCLUSION

Lowe's disclosure form violated the FCRA's "standalone" and "clear and conspicuous" disclosure mandates. Lowe's decision to include details and a disclosure related to "child/ward" reports and future disclosures, in light of the pellucid language of the FCRA, constitutes an objectively unreasonable interpretation of the statute—a willful violation under the *Safeco* standard.

As such, the district court's order of dismissal should be reversed, and the case should be remanded for discovery and consideration of the claims on the merits.

Date: March 7, 2024

Respectfully submitted,

By: */s/ Taylor T. Smith*

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso
ppeluso@woodrowpeluso.com
Taylor T. Smith
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E. Mexico Ave., Suite 300
Denver, CO 80210
Tel: (720) 213-0676

*Attorneys for Appellant Justin Downing*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** _____23-16102_____

I am the attorney or self-represented party.

**This brief contains __5,874__ words,** excluding the items exempted by

Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App.

P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X**] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P.
29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint
brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** __/s/ Taylor T. Smith_____ **Date** 3/7/2024_____
*(use "s/[typed name]" to sign electronically filed documents)*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: March 7, 2024        By: */s/ Taylor T. Smith*

                              Steven L. Woodrow
                              swoodrow@woodrowpeluso.com
                              Patrick H. Peluso
                              ppeluso@woodrowpeluso.com
                              Taylor T. Smith
                              tsmith@woodrowpeluso.com
                              Woodrow & Peluso, LLC
                              3900 E. Mexico Ave., Suite 300
                              Denver, CO 80210
                              Tel: (720) 213-0676

                              *Attorneys for Appellant Justin Downing*